IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CR-59-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MELVIN CORTEZ CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

On October 5, 2020, Melvin Cortez Carter ("Carter") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 291, 294]. On December 30, 2020, the United States responded in opposition [D.E. 298]. On January 4, 2021, Carter replied [D.E. 299]. As explained below, the court denies Carter's motion.

I.

On March 21, 2011, Carter pleaded guilty to conspiracy to interfere with interstate commerce by robbery (count one) and using and carrying firearms during and in relation to a crime of violence and aiding and abetting (count three). See [D.E. 73, 77]. On July 19, 2011, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 97, 120, 237]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Carter's total offense level to be 19, his criminal history category to be IV, and his advisory guideline range to be 46 to 57 months' imprisonment on count one and 120 months' imprisonment on count three. See [D.E. 237] 1. After granting the government's downward departure motion and thoroughly

considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Carter to 21 months' imprisonment on count one and a consecutive sentence of 120 months' imprisonment on count three, for a total sentence of 141 months' imprisonment. See [D.E. 127] 2. Carter appealed. On April 12, 2012, the United States Court of Appeals for the Fourth Circuit affirmed Carter's sentence. See United States v. Carter, 474 F. App'x 331, 334 (4th Cir. 2012) (per curiam) (unpublished).

On June 13, 2016, Carter moved to vacate his sentence under 28 U.S.C. § 2255. See [D.E. 176]. On September 10, 2019, the court dismissed Carter's section 2255 motion and denied a certificate of appealability. See [D.E. 250]. Carter appealed. On December 3, 2019, the Fourth Circuit dismissed Carter's appeal for failure to prosecute. See [D.E. 280].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

2

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but

---

    (B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)   Family Circumstances.—

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Carter's request for compassionate release, Carter contends that he has exhausted his administrative requirements. See [D.E. 291] 2. Carter alleges that he submitted his request for compassionate release to the BOP and that 30 days have elapsed without a response. See id. The government has invoked section 3582's exhaustion requirement, contending that the BOP has no records of receiving a request from Carter. See [D.E. 298] 17–18; [D.E. 298-1] 2; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020). The court assumes without deciding that Carter has exhausted his administrative remedies and addresses Carter's claim on the merits.

Carter seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Carter cites the COVID-19 pandemic, the fact that he has contracted COVID-19, and his health conditions, including sickle cell anemia, chronic hepatitis B, a heart murmur, and blood clots. See [D.E. 291] 4–5; [D.E. 294] 5–8.[2] Carter also cites the conditions at USP Terre Haute, his rehabilitation efforts, his release plan, and that he has served over nine years of his sentence. See [D.E. 291] 6–11; [D.E. 294] 6–7.

---

[2] BOP records indicate that Carter has recovered from COVID-19. See [D.E. 294-1] 1.

5

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Carter states that he suffers from sickle cell anemia, chronic hepatitis B, a heart murmur, and blood clots, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Carter serves his sentence. Accordingly, reducing Carter's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Carter's health conditions are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Carter's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Carter is 33 years old and engaged in horrible criminal behavior in August 2010. See PSR ¶¶ 4–13. On August 10, 2010, Carter conspired with four individuals to rob the Pea Ridge Convenience Store in Roper, North Carolina. See id. Carter and his co-conspirators entered the store, brandished a 20-gauge shotgun and a .25 caliber pistol, ordered the employees to lie on the ground, and stole $1,602.40. See id. During the robbery, one of Carter's co-conspirators discharged his firearm twice, nearly striking one of the employees. See id. On August 11, 2010, Carter and his co-conspirators attempted to rob the Red Apple Market in Roper, North Carolina. See id. As Carter and his confederates approached the store, they noticed a patrol car. See id. Attempting to evade

6

the police, Carter recklessly drove his vehicle into oncoming traffic, ran two stop signs, sped through residential neighborhoods at speeds exceeding 55 miles per hour, and nearly collided with two other vehicles before being apprehended. See id. Carter also is a recidivist with convictions for possession of marijuana, possession of stolen goods, breaking and entering a motor vehicle, larceny, driving while license revoked, accessory after the fact to larceny from a person, and flee/elude arrest with a motor vehicle. See id. ¶¶ 15–22. Carter also has performed poorly on supervision. See id. ¶¶ 15–16. Nonetheless, Carter has taken some positive steps while incarcerated. See [D.E. 291] 11; [D.E. 294] 8; [D.E. 294-1]. The court also has considered Carter's potential exposure to COVID-19, the conditions at USP Terre Haute, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Carter, the section 3553(a) factors, Carter's arguments, the government's persuasive response, and the need to punish Carter for his criminal behavior, to incapacitate Carter, to promote respect for the law, to deter others, and to protect society, the court declines to grant Carter's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

II.

In sum, the court DENIES Carter's motion for compassionate release [D.E. 291, 294].

SO ORDERED. This 27 day of January 2021.

JAMES C. DEVER III  
United States District Judge